UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAULA FERRIS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:11-cv-836-TWP-MJD |
| | ) |
| DELAWARE COUNTY DEPUTY | ) |
| DAVID WILLIAMS, and | ) |
| DELAWARE COUNTY SHERRIFF'S | ) |
| OFFICE, | ) |
| | ) |
| Defendants. | ) |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants' Motion for Summary Judgment. This case was brought by Plaintiff, Paula Ferris ("Ms. Ferris"), against Defendants, Delaware County Deputy David Williams ("Deputy Williams"), and the Delaware County Sheriff's Office (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983 alleging a violation of her Fourth Amendment rights and other state law claims. Defendants allege Ms. Ferris does not have a viable claim under the Fourth Amendment for her claims of false arrest and unreasonable search and seizure nor among her state law claims under the Indiana Constitution and for false imprisonment and negligence. Defendants also assert that Deputy Williams is entitled to qualified immunity. For the reasons set forth below, Defendants' Motion for Summary Judgment (Dkt. 37) is **GRANTED**.

**I.   BACKGROUND**

On June 8, 2009, Deputy Williams was dispatched to the Country View Mobile Home Park in Muncie, Indiana to investigate an alleged theft reported by Jeffery S. English ("Mr. English"). After Deputy Williams arrived at the mobile home park, Mr. English reported that the following items which belonged to him had been taken from a trailer he was in the process of

repairing: 1) paddle bits; 2) lady's work bag; 3) 100 foot yellow extension cord; 4) saws; 5) a Black & Decker fan; and 6) a fan heater. Mr. English further reported that a local boy, Dallas Jay Sargent ("Dallas") had informed Mr. English that Ms. Ferris had previously requested his assistance in removing the listed items from the trailer. After learning this information, Deputy Williams interviewed Dallas who informed him that on or around May 30, 2009, Ms. Ferris had asked him to assist her in removing certain items from the trailer belonging to Mr. English and that he later observed some of the items in the laundry room of Ms. Ferris' trailer.

On June 15, 2009, Deputy Williams made contact with Ms. Ferris at her trailer. Ms. Ferris denied asking Dallas to help her remove items that belonged to Mr. English. Deputy Williams requested permission to search her residence and Ms. Ferris refused the request. In her affidavit, Ms. Ferris states that Deputy Williams did not ask her to sign a consent to search form, but did request she write a statement of what occurred, which she did. Thereafter, on June 28, 2009, Deputy Williams received a telephone call from the manager of the Country View Mobile Home Park advising him that Elise Ferris ("Elise"), Ms. Ferris' seventeen year old daughter, wanted to speak with him. Upon his arrival at the trailer park, Elise informed Deputy Williams that she knew her mom "took the stuff because it was in my house" and she felt badly about her mother stealing property and lying about her actions. Elise further told Deputy Williams she was afraid her mother would attempt to blame her for the theft, since her mother had previously made a false report concerning Elise.

After informing Deputy Williams of her concerns, Elise offered to bring some of the stolen items in her mother's trailer to him. Deputy Williams asked her to do so. Elise complied and returned with the 100 foot yellow extension cord and a fan, which Mr. English identified as his property. After this occurred, Deputy Williams located Ms. Ferris later that evening and arrested her for possession of stolen property. During this encounter, Ms. Ferris told Deputy

2

Williams that she did not steal the reported missing items and that Elise had brought the items to her house. Ms. Ferris was held in jail until June 23, 2009. She was charged with conversion in Muncie City Court; however, charges were subsequently dismissed on December 3, 2009 due to a lack of sufficient evidence. Ms. Ferris filed this suit in Delaware Circuit Court on June 6, 2011, and the matter was subsequently removed to this Court.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. DISCUSSION

A. **Fourth Amendment Claims**

In Count I of her complaint, Ms. Ferris alleges that Deputy Williams violated her rights under the Fourth Amendment claiming false arrest and an unlawful search. Defendants, on the other hand, argue that Ms. Ferris does not have a valid false arrest or unlawful search claim under the Fourth Amendment because Deputy Williams had probable cause to believe that she had committed the crime of conversion. Under Indiana law, an individual commits criminal conversion when he or she "knowingly or intentionally exerts unauthorized control over property of another person…" Ind. Code 35-43-4-3(a).

In order for Ms. Ferris to succeed on her federal false arrest claim brought pursuant to 42 U.S.C. § 1983, she must establish that she was arrested without probable cause. *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996). A finding of "[p]robable cause to arrest [an individual] is an absolute defense to any claim against police officers under § 1983 for wrongful arrest, even where the defendant officers allegedly acted upon a malicious motive." *Wagner v. Washington Cnty.*, 493 F.3d 833, 836 (7th Cir. 2007). Law enforcement officers have probable cause to arrest an individual "if, at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008). "In determining whether an officer had probable cause, the court steps into the shoes of a reasonable person in the position of the officer." *Id.*; *see Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) (noting that the test in determining probable cause is an objective one based on whether a reasonable officer would have believed the person committed a crime). Thus, the Court's inquiry must begin by

4

determining whether under the totality of the circumstances was it reasonable for Deputy Williams to believe that Ms. Ferris had committed or was presently committing a crime.

Contrary to Ms. Ferris' assertions, Defendants have designated sufficient evidence to establish that Deputy Williams had probable cause to believe Ms. Ferris had committed or was committing a crime under state law. *See Thomas v. City of Peoria*, 580 F.3d 633, 638 (7th Cir. 2009). The Seventh Circuit has stated that "in making a decision to arrest someone for criminal conduct that he did not witness, a police officer may rely on information provided to him by the victim or by an eyewitness to the crime that the officer reasonably believes is telling the truth." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007) (citation and quotations omitted). Thus, probable cause to arrest Ms. Ferris, if established, could be provided by the statements of Elise, Dallas, and Mr. English. *See United States v. Evans*, 27 F.3d 1219, 1229 (7th Cir. 1994) (finding that the combination of information from confidential informants, the identity of stolen plates, and other corroborating surveillance information produced probable cause for arrest).

Here, Deputy Williams in his sworn affidavit stated that he was informed by Dallas that Ms. Ferris had asked him for his assistance in removing items from Mr. English's mobile home. Dallas further informed Deputy Williams that he refused to assist Ms. Ferris for fear of getting in trouble. Deputy Williams also indicated that he took a statement from Elise after interviewing her on June 28, 2009. According to his affidavit, Elise stated that "she felt bad about her mother having the stolen property" and that the alleged "missing items were still in her mother's trailer and offered to bring them to [Deputy Williams]." Dkt. 39-1 at 3. Thereafter, Elise brought two items that were located in her mother's mobile home to Deputy Williams, and Deputy Williams observed Mr. English identify the items as belonging to him. Ms. Ferris insists that she never asked Dallas to help her remove any items from her trailer that belonged to Mr. English and

5

denies that she had taken the items. However, even when viewing the facts in the light most favorable to Ms. Ferris, a reasonable jury could conclude that Deputy Williams reasonably believed Dallas, Elise and Mr. English's statements to him. *See Mustafa v. City of Chi.*, 442 F.3d 544, 548 (7th Cir. 2006) ("Once a reasonably credible witness informs an officer that a suspect has committed a crime, the police have probable cause to arrest the suspect.").

In addition, Elise's statement to Deputy Williams is reliable because it is analogous to a face-to-face informant. The Seventh Circuit, as well as other circuits, has acknowledged that such tips are more trustworthy and reliable than anonymous tips. *See United States v. Dotson*, 102 F. App'x 508, 510 (7th Cir. 2004) *cert. granted,* 543 U.S. 1110 (2004); *United States v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000); *United States v. Salazar*, 945 F.2d 47, 50-51 (2d Cir. 1991) ("[T]hough the informant in the present case had not previously been relied on by the officers, a face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster."). As such, based on the information give to Deputy Williams by Elise and Mr. English, the Court concludes Deputy Williams had probable cause to believe that Ms. Ferris had committed the crime of conversion.

Next, Ms. Ferris alleges Deputy Williams violated her Fourth Amendment right when he engaged in an unlawful search by accepting items from Elise that were located in her home. The Defendants argue that they are entitled to summary judgment on this issue because Elise was not acting as a government agent, but as a private actor. Further, they assert that as Ms. Ferris' daughter who lived in the same trailer with Ms. Ferris, Elise possessed common authority over the property to consent to a warrantless search. "Although the Fourth Amendment generally prohibits searches and seizures performed without a warrant, there is an exception when someone with actual or apparent authority consents to the search or seizure." *United States v. Aghedo*, 159 F.3d 308, 310 (7th Cir. 1998). Actual authority is based on whether there is mutual

use of the property by individuals generally having joint access or control over the property for most purposes. *United States v. Ryerson*, 545 F.3d 483, 487 (7th Cir. 2008) (citing *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)). Apparent authority exists when the facts available to a law enforcement officer at the time of the search would allow a person of reasonable caution to believe that the consenting party had the authority over the premises. *Id.* at 489.

In this case, the alleged facts point away from a finding that Elise was acting as an agent for Deputy Williams or the sheriff's office. Nothing in the facts suggests that Deputy Williams directed Elise to obtain the alleged stolen items from the home she shared with her mother and bring them to him. Instead, Elise in her affidavit stated that she offered to bring the items in her home to Deputy Williams. Furthermore, the evidence suggests that Elise initiated the meeting with Deputy Williams to inform him of the alleged stolen items. As such, the Court finds that Elise was acting as a private actor pursuing her own interests when she decided to offer her help in obtaining the items kept in her home. *See United States v. Aldridge*, 642 F.3d 537, 542 (7th Cir. 2011) (finding that a third-party individual cooperating with government agents in a SEC investigation of a financial planning firm was a private actor, and not a government agent when she initiated the delivery of items).

Importantly, the Court also concludes that Elise had both actual and apparent authority to consent to a warrantless search of her mother's trailer. As Ms. Ferris' daughter, Elise lived with her mother in their home in the mobile home park. Based on their familial relationship as mother and daughter, Elise would have full access to the mobile home, and thus possess common authority over it. As such, Elise had actual authority to consent to a search when she offered to bring the items to the deputy. *See United States v. Chaidez*, 919 F.2d 1193, 1202 (7th Cir. 1990) (stating that a person's actual authority over a premise is sufficient, by itself, to give consent to a search, as an exception to the warrant requirement). The facts also point to a finding that Elise

had apparent authority as well when she introduced herself to Deputy Williams as Ms. Ferris' daughter, who lived at the same address as her mother. Thus, when Elise offered her help to the deputy, a reasonably cautious person would believe that Elise had authority to consent to the search of her home. Accordingly, because Elise had both actual and apparent authority to consent to the search of her trailer home, Elise's delivery of the items to Deputy Williams did not violate Ms. Ferris' Fourth Amendment rights.

Finally, Defendants argue that Deputy Williams, in his individual capacity as a government official, is shielded from civil liability under qualified immunity. Generally, government officials performing discretionary functions are entitled to qualified immunity, unless the plaintiff can show a violation of a constitutional right and that the right was clearly established at the time of the violation. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). In determining whether qualified immunity will apply to shield police officers from suit, a court undertakes a two-step inquiry. The court must determine (1) "whether the plaintiff's allegations make out a deprivation of a constitutional right," and (2) "whether the right [at issue] was clearly established at the time of the defendant's alleged misconduct." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). Because Ms. Ferris cannot show that Deputy Williams violated her constitutional rights, she cannot satisfy the first step in the inquiry and Deputy Williams is therefore entitled to qualified immunity. *See Reynolds*, 488 F.3d at 766. Accordingly, the Court finds that the Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claims.

**B.     *Monell* Claim**

Ms. Ferris also named the Delaware County Sheriff's Office as a defendant. From the complaint, it is not apparent what particular claims Ms. Ferris asserts against the Delaware County Sheriff's Office. However, a municipality and other local government units cannot be

held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Pursuant to *Monell*, a plaintiff may maintain a Section 1983 claim against a municipality by establishing a policy or custom attributable to a municipal policymaker who was the "moving force" behind the constitutional deprivation. *Id.* at 694-95. Thus, to establish *Monell* liability, Ms. Ferris must show that her constitutional rights were deprived by: (1) an express policy; (2) a widespread practice that is well-settled enough to amount to a custom or usage with the force of law; or (3) an act by an individual with final decision policymaking authority that caused her injury. *Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008); *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 516 (7th Cir. 2007). In this case, even when viewing the facts in the light most favorable to Ms. Ferris, she has failed to allege or establish a constitutional deprivation was caused by a policy, a practice, or a municipal agent with final policymaking authority. As such, Ms. Ferris has failed to set forth sufficient evidence to establish that the Delaware County Sheriff's Office is subject to liability pursuant to 42 U.S.C. § 1983. Accordingly, the Court finds the Defendants are entitled to summary judgment on the *Monell* claim.

**C.     State Law Claims**

    **1.     Indiana Constitutional Claim**

In Count II of her complaint, Ms. Ferris also alleges a violation of Article 1, Section 11 of the Indiana Constitution, which mirrors the Fourth Amendment of the United States Constitution. In order to prevail on this type of claim, Ms. Ferris must first establish how she can bring a private cause of action for damages under the Indiana Constitution. The Indiana Supreme Court in *Cantrell v. Morris*, 849 N.E.2d 488 (Ind. 2006), articulated that there is no need to create a new cause of action when existing tort law protects a right guaranteed by the Indiana Constitution. *Id.* at 498. Accordingly, the judges of this District have consistently refused to

recognize an implied right of action under the Indiana Constitution. *Branson v. Newburgh Police Dep't*, 849 F. Supp. 2d 802, 812 (S.D. Ind. 2011); *Greater Indianapolis Chapters of N.A.A.C.P. v. Ballard*, 741 F. Supp. 2d 925, 934 (7th Cir. 2010) (citing cases). This Court agrees with the reasoning of the judges of this District and similarly declines to recognize an implied right of action under Article 1, Section 11 of the Indiana Constitution. *See Willits v. Wal-Mart Stores, Inc.*, No. IP99-0276-C-M/S, 2001 WL 1028778, at *15 (S.D. Ind. July 30, 2001) (declining to recognize an implied right of action under Article 1, Section 11 of the Indiana Constitution). Therefore, the Court finds that the Defendants are entitled to summary judgment on this particular claim.

### 2. False Imprisonment and Negligence Claims

Lastly, Ms. Ferris brings a false imprisonment claim (Count III) and a negligence claim (Count V) against the Defendants arguing that Deputy Williams arrested her despite her denial that she committed any crime. The Court will address these remaining state law claims in turn.

With respect to Ms. Ferris' false imprisonment claim, false imprisonment constitutes the unlawful restraint upon one's freedom and movement or the deprivation of one's liberty without consent. *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002). In addition, law enforcement immunity conferred by the Indiana Tort Claims Act ("ITCA") does not apply to claims of false imprisonment. *Id.* The Indiana Supreme Court has acknowledged that when a plaintiff's false imprisonment claim stems from their alleged false arrest, a court's analysis of the false arrest claim applies equally to the false imprisonment claim. *Row v. Holt*, 864 N.E.2d 1011, 1016 n.4 (Ind. 2007). As discussed previously, when construing all facts and reasonable inferences in favor of Ms. Ferris, she has failed to demonstrate that a genuine issue of material fact exists regarding probable cause for her arrest. Because this Court has found that Deputy Williams had probable cause to arrest Ms. Ferris for committing the crime of conversion, her

10

false imprisonment claim must fail. *See Miller*, 777 N.E.2d at 1105 (finding that the defendants were not liable for false imprisonment when there was probable cause for the plaintiff's arrest); *Roddel v. Town of Flora*, 580 N.E.2d 255, 259 (Ind. Ct. App. 1991). Accordingly, the Court concludes that Defendants are entitled to summary judgment on Mr. Ferris' false imprisonment claim.

In regards to her negligence claim, Ms. Ferris argues that Deputy Williams breached his duty to reasonably investigate the alleged crime, failed to obtain proper consent prior to searching her home, and failed to act as a reasonable person under the circumstances. In response, Defendants assert that Deputy Williams has immunity from the negligence claim under the ITCA. Under Indiana law, tort claims against governmental entities are controlled by the ITCA. Ind. Code § 34-13-3-1. Pursuant to Indiana Code § 34-13-3-3(8), a governmental employee acting within the scope of his employment is not liable if a loss results from the adoption and enforcement of a law. The Indiana Court of Appeals defined "enforcement" as "those activities in which a government entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Miller*, 777 N.E.2d at 1104. Here, the designated facts show that Deputy Williams was actively investigating a crime of theft while acting as a law enforcement officer. And Ms. Ferris' claim of negligence arises from Deputy Williams arresting her pursuant to his belief that she was committing a criminal act. Ms. Ferris has not presented any evidence to suggest that there is a genuine issue of material fact as to whether Deputy Williams was acting outside the scope of his employment. In fact, Count V specifically states "Deputy Williams has a duty as a police officer to reasonably investigate criminal matters…". In stating her claim, Ms. Ferris concedes that Deputy Williams was acting as a law enforcement officer when her loss occurred. As such, Deputy Williams has immunity from the negligence claim under the ITCA because the Court

11

finds he was acting within the scope of his employment[1] and engaged in law enforcement activity at all times.  *See id.* (finding that the police officers were immune from plaintiff's negligence claim when they were engaging in their law enforcement duties).  Therefore, the Defendants are entitled to summary judgment on Ms. Ferris' negligence claim.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Dkt. 37) is **GRANTED**.

SO ORDERED.

Date: 12/12/2012

*[signature]*

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles R. Clark
cclark1934@live.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Ronald J. Semler
STEPHENSON MOROW & SEMLER
rsemler@stephlaw.com

---

[1] Because Deputy Williams was acting within the scope of his employment, the Court concludes that he is also personally immune from liability with respect to Ms. Ferris' state law claims.  *See* Ind. Code § 34-13-3-5(b).